IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | |
|---|---|
| SHARINA WARE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv- |
| ) | |
| BOARD OF EDUCATION OF THE CITY OF ) | |
| CHICAGO ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

NOW COMES SHARINA WARE, by and through her attorney, CHRISTINA A. PAPAVASILIOU OF CP LAW CHICAGO LLC, and Complains of THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, stating:

### JURISDICTION and VENUE

1. Plaintiff Sharina Ware is a citizen of the United States of America, and, for the relevant time, was a citizen and resident of the Chicago, Illinois metropolitan area, and the State of Illinois.

2. Defendant BOARD OF EDUCATION OF THE CITY OF CHICAGO ("Defendant") is an organ of the city government of Chicago.

3. Plaintiff worked in the Chicago Public Schools (hereafter "CPS") intermittently since the fall of 2010.

4. The matters complained of in this Complaint occurred while plaintiff was employed at Dyett High School, A CPS high school located in Chicago, Illinois.

5. Plaintiff worked as a special education teacher at Dyett High School from August 27, 2018 through June 1, 2022.

6. Defendant, on or about the fall of 2010 through June 1, 2022, was an employer as defined in Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000(e) ("Title VII"), and as defined in the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq* ("IWA").

7. This action is brought under Title VII and the IWA, under Illinois common law.

## STATEMENT OF GENERAL FACTS

6. Plaintiff, on or about the fall of 2010 through June 1, 2022, was employed by Defendant, on and off, as a substitute teacher and as a full-time special education teacher.

7. Plaintiff is African American and female.

8. On December 9, 2021, Plaintiff filed a charge with the Illinois Department of Human Rights," alleging violations of Title VII, which was subsequently cross-filed with the Equal Employment Opportunity commission "EEOC."

9. Plaintiff was terminated by Defendant on June 1, 2021.

10. On March 29, 2022, the EEOC issued a Dismissal and Notice of Suit Rights.

11. On April 4, 2022, Plaintiff received the Dismissal and Notice of Suit Rights.

12. As a result of Defendant's discriminatory, retaliatory and otherwise unlawful conduct, Plaintiff has lost substantial earnings and other job related benefits.

13. The loss of Plaintiff's employment negatively affected her pension and retirement benefits.

14. Plaintiff has also suffered severe emotional distress, embarrassment and humiliation.

## COUNT I – SEXUAL HARASSMENT

15. At all relevant times herein, Cortez McCoy was employed by Defendant in various capacities.

16. On or about the fall of 2019, Cortez McCoy was employed by Defendant as Interim Principal of Dyett High School.

17. On or about the fall of 2019 to the present, Dorethea Butler was employed by Defendant as Assistant Principal of Dyett High School.

18. Cortez McCoy is a black male.

19. In or about March of 2019, Plaintiff and Cortez McCoy started dating.

20. During the time that Plaintiff was dating Cortez McCoy, he was working at Gwendolyn Brooks College Preparatory Academy as an Assistant Principal.

21. Throughout the time that Plaintiff was dating Cortez McCoy, she spoke openly to him about her employment at Dyett High School, and he was aware that she worked there.

22. On or about June of 2019, Plaintiff ended the relationship with Cortez McCoy.

23. At the beginning of the school year, in August of 2019, Plaintiff discovered that Cortez McCoy had applied to be the principal of Dyett School, and had been selected for the position.

24. Cortez McCoy did not mention to Plaintiff at any point that he was applying to be the principal of the school where she worked.

25. Cortez McCoy sought and acquired this position in order to gain a position of power over Plaintiff.

26. Cortez McCoy sought and acquired this position in order to harass Plaintiff for breaking up with him.

27. Immediately upon discovering that Mr. McCoy was the principal of Dyett, Plaintiff spoke to him, stating that she was very uncomfortable with the fact that he was there, and would prefer minimal, strictly necessary and professional interactions with him.

28. Plaintiff attempted to focus on her work, confident that since she had never had performance issues for over a decade, he would be unable to find fault with her.

29. Plaintiff's position as Special Education Teacher required her to have regular contact with the administration, including meetings in which teachers could voice concerns about the school.

30. Initially, in an attempt to avoid contact with Cortez McCoy, Plaintiff communicated with Assistant Principal Dorethea Butler instead.

31. Immediately upon his arrival at Dyett High School, Cortez McCoy began criticizing Plaintiff and turning other administrators against her.

32. At some point within the first few weeks of the school year, Cortez McCoy began a romantic relationship with the Assistant Principal, Dorethea Butler.

33. On or about October 2019, after returning from the teachers' strike, Plaintiff noticed that Assistant Principal Dorethea Butler had become hostile toward her.

34. By November of 2019, Plaintiff noticed that several members of the administration were displaying hostility toward Plaintiff in meetings, when she raised legitimate concerns.

35. On or about November 26 of 2019, Plaintiff was evaluated by Assistant Principal Dorothea Butler.

36. In her evaluation of Plaintiff, Dorothea Butler did not follow standard established CPS evaluation metrics, and criticized Plaintiff for minor isolated incidents that were unrelated or marginally related to the essential duties of her job.

37. On information and belief, Ms. Butler evaluated Plaintiff unfairly because she was urged to do so by Cortez McCoy.

38. On or about January 14, 2020, there was a large gang fight among students at Dyett High School which directly involved some of the school's male basketball players, to which the police responded.

39. Plaintiff noticed that one of her students was handcuffed, and was suffering an anxiety attack.

40. When she went into the teacher's lounge to get some water for her student, Plaintiff noticed that the basketball players, who had been directly involved in the fight, were visibly relaxed and unconcerned in the teacher's lounge with their coach, Jamal Gill, who was also a school security guard.

41. In the first half of the school year, Cortez McCoy had befriended Jamal Gill.

42. On information and belief, Cortez McCoy had criticized and derogated Plaintiff to Jamal Gill for the purpose of inducing harassment of her indirectly by her colleagues.

43. When Plaintiff returned to her student, his mother was present, complaining that the basketball players were being protected by the school and treated better than her son, and at her son's expense.

44. At all relevant times it was a well-known part of the culture at the school that the basketball players were never disciplined and were protected unfairly, at the expense of other students.

45. Plaintiff agreed with her students' mother when she criticized the above-described well-known part of the school culture, and sympathized with her.

46. Jamal Gill overheard Plaintiff agreeing with the parent, walked over to her, and began to berate her in a raised voice and with aggressive body language.

47. Upon noticing Mr. Gill's behavior, Assistant Principle Dorothea Butler also walked over to Plaintiff and joined him in berating Plaintiff, also using a raised voice.

48. After this incident Plaintiff felt shock, humiliation and confusion, because she had worked with Jamal Gill the previous year and did not understand his treatment of her.

49. On information and belief, Jamal Gill was hostile toward Plaintiff because his principal had repeatedly criticized and berated her to him.

50. Later that day Plaintiff complained of the incident directly to Assistant Principal Butler, because she did not feel comfortable complaining to Cortez McCoy.

51. Plaintiff told Ms. Butler that as a fellow female employee, she should have discouraged – rather than encouraged – a male employee to stand over her and yell at her in an intimidating manner.

52. Plaintiff told Ms. Butler that she was contributing to a hostile working environment for women.

53. Ms. Butler ignored Plaintiff's complaint.

54. On or about March 2 of 2020, Plaintiff applied to be a member of the Local School Council ("LSC").

55. The duties of the LSC include the granting or denial of any interim principal of a four (4) year contract, evaluation of the principal, and management of the school budget.

56. The same day that she finished her application for LSC, Plaintiff received a meeting invitation to the principlal's office, to meet with Dorethea Butler and Cortez McCoy.

57. At the meeting, Mr. McCoy and Ms. Butler repeatedly accused Plaintiff of misconduct with respect to one student's educational file, which Plaintiff vehemently denied, and which misconduct would have been illegal.

58. To Mr. McCoy's and Ms. Butler's visible disappointment, Plaintiff cut the meeting short and told them that the accusation was extremely serious, and that the meeting would have to be rescheduled so that she could acquire a union representative.

59. Mr. McCoy and Ms. Butler never rescheduled the meeting.

60. The meeting was a pretext for an opportunity to intimidate Plaintiff and to discourage her from her efforts to gain membership on the LSC.

61. The false accusations were a pretext designed to intimidate Plaintiff and to discourage her from her efforts to gain membership on the LSC.

62. Cortez McCoy knew that the accusations were false at the time that he made them.

63. Dorethea Butler knew that the accusations were false at the time that she made them.

64. On or about April of 2020, Plaintiff refused to write Individual Education Plans "IEPs" without legal clearance and directives from the state as to how to comply with the law.

65. By this time, Plaintiff understood that she was unable to get guidance or help from her assistant principal or principal.

66. On or about April 14, 2020, Plaintiff emailed the entire department seeking guidance on IEPs.

67. Although there was a department meeting April 20, 2020, in which Cortez McCoy could have addressed the issue in the open, he chose to have a private meeting with Plaintiff the next day, in which he tried to intimidate her and make her feel like she had done something wrong.

68. On or about April 2021, when teachers returned to in-person learning, several teachers told Plaintiff about the statements that Cortez McCoy had made to teachers and staff to turn them against her.

69. In or about May of 2021, the LSC approved Cortez McCoy's four (4) year contract.

70. Plaintiff voted against the contract.

71. Plaintiff refused to sign the contract.

72. Plaintiff filed numerous grievances, and made numerous complaints of sexual harassment in the workplace.

73. Cortez McCoy continued to single out Plaintiff and harass her in a similar manner, until she was terminated in June of 2022.

74. Despite Plaintiff's multiple grievances and complaints, Plaintiff conducted a sham investigation of sexual harassment in the workplace.

75. Defendant summarily dismissed Plaintiff's allegations of sexual harassment, failing to properly investigate, identify or discipline the harassment, and additionally failing to prevent future harassment.

76. The sexual harassment created a hostile, intimidating and uncomfortable work environment which substantially interfered with Plaintiff's ability to perform her job.

77. Plaintiff was never provided a legitimate reason for the above adverse employment actions.

**COUNT II – RACIAL DISCRIMINATION IN EMPLOYMENT**

78. Plaintiff restates and realleges paragraphs 1-76 as if stated here in full.

79. Throughout the course of her employment, Plaintiff personally observed and experienced that CPS treated white women's complaints of sexual harassment more seriously than black women's complaints of sexual harassment.

80. In her numerous grievances and complaints of sexual harassment by Cortez McCoy, Plaintiff alleged that if she had been a white female, her complaints would have been taken more seriously.

81. The above-described discrimination and retaliation created a hostile, intimidating and uncomfortable work environment which, eventually, substantially interfered with Plaintiff's ability to perform her job.

82. Defendant summarily dismissed Plaintiff's multiple allegations of race discrimination, failing to investigate, identify or discipline racial discrimination, and additionally failing to prevent future discrimination.

83. Plaintiff was never provided a legitimate reason for the above adverse employment actions.

84. Similarly situated white employees and similarly situated employees who had not engaged in protected activities were not treated that way.

85. The above-described actions were taken against Plaintiff due to her race, in violation of Title VII.

**COUNT III – RETALIATION**

86. Plaintiff restates and realleges paragraphs 1-84 as if stated here in full.

87. Throughout her employment, Cortez McCoy continued to retaliate against Plaintiff by engaging in gossip about her and advocating for her dismissal.

88. Throughout her employment, because of Cortez McCoy's conduct, various administrative staff continued to retaliate against Plaintiff by engaging in gossip about her, which gossip was instigated by Cortez McCoy.

89. In the subsequent months, several members of the administration continued to retaliate against Plaintiff by criticizing her for reasons unrelated or minimally related to her job performance.

90. Plaintiff suffered numerous adverse employment actions because of the conduct of Cortez McCoy.

91. Plaintiff suffered numerous adverse employment actions because of the conduct of Defendant.

92. The above-described actions were taken against Plaintiff only because she is female, because she is African-American, and because she had engaged in the protected activity of complaining of sexual harassment and race discrimination in the workplace.

93. Similarly situated, non-African-American employees and similarly situated employees who had not engaged in protected activities were not treated that way.

94. Plaintiff was never provided a legitimate reason for the above adverse employment actions.

## COUNT IV – VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT

95. Plaintiff restates and realleges paragraphs 1-94 as if stated here in full.

96. Plaintiff repeatedly refused to participate in instructions by Cortez McCoy that, in her professional capacity as Special Education Teacher, she violate the laws and regulations to which she was bound.

97. Plaintiff repeatedly refused to participate in instructions by Defendant that, in her professional capacity as Special Education Teacher, she violate the laws and regulations to which she was bound.

98. Within weeks of her hiring, and throughout the course of her employment, Plaintiff continually alleged to Defendant that various procedures were unfair to students, and not compliant with the law.

99. Defendant illegally discriminated against, retaliated against, and ultimately discharged Plaintiff because of her refusal to participate in and facilitate Defendant's unlawful conduct, or apparently unlawful conduct, in violation of the IWA.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant and that she be granted the following relief:

a.) All back wages and benefits from the date of constructive discharge.

b.) Emotional damages in excess of $100,000.

b.) Liquidated compensatory damages in a sum in excess of $100,000.

c.) Punitive damages.

d.) Pre-judgment and post-judgment interest.

e.) Costs of such, including reasonable attorney's fees.

f.) Such further relief as this Court deems appropriate.

Plaintiff demands trial by jury.

                                                                         /s/ Christina A. Papavasiliou
                                                                          Attorney for Plaintiff

ARDC #6283697
Christina A. Papavasiliou
180 N. LaSalle St.
Suite 3700
Chicago, IL 60601
(312) 379-9580
Fax: (312) 264-0813